**REINHARD v REINHARD**

Ohio Appeals, 2nd Dist, Franklin Co

Nos 2644 & 2654. Decided Dec 31, 1936

James M. Hengst, Columbus, for The Fidelity & Deposit Company of Maryland.
R. W. Kilbourne, Columbus, for Mary DeLourdes Reinhard.
Charlotte Hogan Vogel, Columbus, for Louise Reinhard Crain.
Henry A. Reinhard, Columbus, for trustee.
Pomerene & Boulger, Columbus, for Maltida H. Reinhard.

## OPINION

By BARNES, J.

The original action was filed in the Court of Common Pleas of Franklin County, Ohio, on the 11th day of April, 1935, by Henry A. Reinhard. as trustee, praying for declaratory judgment as to the proper distribution of the trust funds, as provided under Item 11 of the last will and testament of Jacob Reinhard, deceased, and also further instructions as to rights and obligations by reason of misappropriation of the trust funds by some of the original trustees, and attempt to restore fund by executed notes afterwards placed in judgment but not paid. The action originated in the Probate Court, and there all the issuable facts raised either through the original petition of the trustee or the answers and cross-petitions of defendants, were determined, as exemplified from the judgment entry- duly journalized. Separate appeals were duly taken from the Probate Court to this court by two of the defendants, namely, The Fidelity and Deposit

Company of Maryland and Mary De-Lourdes Reinhard. The two appeals were separately numbered. This explains why the actions are presented in this court under case numbers 2644 and 2654.

For convenience the two cases are submitted together upon identical transcript of docket and journal entries and same pleadings. The cases are submitted in this court on the original pleadings, agreed statement of facts and a single bill of exceptions.

The following brief statement will render understandable the controverted questions:

On the 9th day of May, 1891, Jacob Reinhard, Sr., executed his last will and testament, and in 1893 died, whereupon said paper writing was duly probated as a last will and testament in the Probate Court of Franklin County, Ohio. Under Item 11 of said will trusts were created and all questions invovled in this controversy arise through this item of the will and its administration. Item 11 reads as follows:

"ITEM 11. I give and bequeath to my said four sons, or to such of them as may survive the others, upon the trust hereinafter mentioned, the sum of forty thousand ($40,000.00) Dollars; that is to say, to hold one moiety, or $20,000.00 of said sum, in trust for the sole and separate use of my daughter, Mary M. Falkenbach; the sum of $20,000.00 to be invested and reinvested, from time to time, by said Trustees for her benefit, and the income that may be derived therefrom to be paid to her, as nearly as may be in semi-annual installments; and upon the further trust, that should my said daughter, Mary M. Falkenbach, die, leaving issue of her body, then said Trustees, or such of them as may survive the others, shall pay said principal sum of $20,000.00 to her issue. But should she die without issue, then said Trustees, or such of them as may survive the others, shall pay said principal sum of $20,000.00 to her brothers who may be living at the time of her death, and to the issue of such of her brothers as may have predeceased her, the issue of a deceased brother to take the same share as the father of such issue would take if living.

"The remaining $20,000.00 of said sum of $40,000.00 said trustees shall hold in trust for the sole and separate use of my daughter, Matilda H. Reinhard, invest and reinvest the same from time to time, for her sole use and benefit and pay to her the increase that may be derived therefrom, as nearly as may be, in semi-annual installments; and upon the further trust, that should my said daughter, Matilda H. Reinhard, die, leaving issue of her body, then said Trustees, or such of them as may survive the others, shall pay the said principal sum of $20,000.00 to her issue. But should she die without issue, then said Trustee, or such of them as shall survive the others, shall pay one-half (½) of said sum of $20,000.00 to such person or persons as she, by her last will and testament or other instrument duly executed may direct.

"The remaining one-half (½) of said sum of $20,000.00 said Trustees, or such of them as may survive the others, shall pay to her brothers who may be living at the time of her death, and to the issue of such of her brothers as may have predeceased her, the issue of the deceased brother to take the same share that the father of such issue would take if living."

The four sons, by name Frank J. Reinhard, John G. Reinhard, Henry A. Reinhard and Jacob Reinhard, Jr., jointly qualified as trustees and executed a bond for the faithful performance of their duties in the sum of $80,000.00. On December 29, 1897, Jacob Reinhard, Jr., resigned, and on January 15, 1899, Frank Reinhard died. The remaining two sons of the testator were continued as trustees by reappointment, which latter appointment continued until the 11th day of September, 1901, at which time these two sons resigned their positions as trustees. Immediately following thereafter several trustees were appointed, following each other in sequence, until February 18, 1935, at which time the present trustee, Henry A. Reinhard, a grandson of the testator, was duly appointed and qualified as such trustee. The daughter, Mary M. Falkenbach, died on the 25th day of December, 1934, without issue.

Each of the four sons of the testator, likewise being the only brothers of Mary M. Falkenbach, preceded her in death, each leaving issue, some of whom survived Mary M. Falkenbach.

The trust created for the use of Matilda M. Reinhard, also known in religious life as Sister Beatrice, is not questioned at the present time under the appeals. This is due to the fact that Matilda H. Reinhard, otherwise known as Sister Beatrice, is still living.

At the present time there apparently is no controversy relative to the issue of Henry Reinhard and Frank Reinhard, either as between the issue themselves or aris-

ing through any claims of any of the other defendants.

The appellant Mary DeLourdes Reinhard is a surviving adopted daughter of Herbert Reinhard, deceased, having been adopted in 1913. Her adopting parent was the son of Jacob Reinhard, one of the sons of the testator. Herbert predeceased his Aunt Mary M. Falkenbach. Herbert Reinhard had no issue, unless it be determined that Mary DeLourdes Reinhard, the adopted daughter, comes under that designation. Herbert's father left surviving other issue, some of whom survived Mary M. Falkenbach.

The sole and only question, as it relates to the appellant Mary DeLourdes Reinhard and her right to participate in the distribution of the fund, requires a construction of Item 11 of the will of the testator.

The claim of the appellant The Fidelity and Deposit Company of Maryland is asserted against the issue of John G. Reinhard, son of the testator and brother of Mary M. Falkenbach, by reason of the admitted fact that following the death of John G. Reinhard four of his five surviving children executed an assignment to The Fidelity and Deposit Company of Maryland of all of their interest in the trust fund, either present or future, for the purpose of reimbursing the Maryland corporation for obligations incurred on behalf of John G. Reinhard, trustee, and for which sums the said John G. Reinhard was primarily liable. Elmer Reinhard, one of the five sons of John G. Reinhard, at the time of the execution of the assignment was a minor and did not join with the other four issue of John G. Reinhard. Two of the sons, Edward Louis and John Jacob, predeceased Mary M. Falkenbach, neither leaving issue. The issue of John G. Reinhard remaining at the death of Mary M. Falkenbach, were Flora Adelaide Halpin, Harriet Reinhard Joyce and Elmer Reinhard.

It is the claim of the appellant The Fidelity and Deposit Company of Maryland that it is entitled on distribution to the four-fifths (4/5) of the fund passing under the will of the testator to the issue of John G. Reinhard.

It was the finding of the Probate Court that this appellant was entitled to only two-thirds (2/3), the remaining one-third (1/3) going to Elmer Reinhard, the son who did not join in the assignment.

The appellant The Fidelity and Deposit Company of Maryland also urges that the issue of Jacob Reinhard, son of the testa-

tor, should not participate in the distribution by reason of the conceded fact that Jacob Reinhard during his lifetime executed a note in the sum of $5629.00 to replenish the trust, to which he was indebted. Said note, afterwards reduced to judgment remains unpaid. The appellant contends that this should be treated as a cross-demand, and being in excess of the amount otherwise coming to the issue, should bar them from any distributive share. The trial court determined against the contention, holding that the issue took direct from the testator.

Very learned and comprehensive briefs have been submitted by counsel representing the various interests. We are also favored with the very able and well analyzed opinion of the trial court.

The one principle of law that all counsel agree upon is that the intent of the testator must control. Another well recognized principle is that in construing wills or other instruments the language used by the testator must be given its plain ordinary meaning. We also must start with the understanding that a testator has the absolute right to make such disposition of his property as meets his desires. Of course, this rule has certain exceptions (for instance, widows' rights), etc., but the exceptions are not present in the instant case.

It sometimes happens that by taking the will by its four corners, words are given a contrary meaning to their ordinary use when a necessity arises in order to follow the testamentary intent. For instance, we find cases where the word "children" is construed to mean heirs, and, contra "heirs" to mean children. Likewise the term "issue," which ordinarily means issue of the body, where the context requires it, may be construed to mean children or heirs. We fail to find any language in the will in the instant case requiring any forced constructions. In our judgment it is plain and unambiguous, and unequivocally states the testator's intention. We fail to see that the many Ohio cases dealing with estate tails, defeasible estates, vested and contingent remainders and so forth, lend any aid in the determination of the issues in the instant case. It is evident that eith-

er the testator or his scrivener had expert knowledge of the manner and method of carrying out his desires and the creation of trusts. It is further apparent that the testator was fully aware of the uncertainty of life and aptly provided for these contingencies. All of these contingencies could be so well provided for through the creation of a trust where otherwise it would have been most difficult.

That it failed in its administration was due to the maladministration of the trustess and and not to any imperfection in the plan. Through the provisions of Item 11 of his will he gave $40,000.00 to his four sons in trust. On the settlement of his estate this fund passed from the estate to the trustees named, provided they accepted and qualified; otherwise the court would have appointed trustees under the well recognized maxim of law that a trust will not fail by reason of the lack of a trustee.

The title and right of possession of this property was in the trustees, not as sons or heirs. The designation that the four sons be appointed trustees was purely descriptive and when appointed, they acted in no other capacity than as trustees. Their sole and only duty was to administer the trust. The $40,000.00 was divided into two moieties of $20,000.00 each. In the instant case we are only concerned with the one moiety of $20,000.00. This moiety, according to the terms of the trust, was for the sole and separate use of his daughter, Mary M. Falkenbach, so long as she lived. The trustees were directed to invest and reinvest the same from time to time and the income derived therefrom was to be paid to her in semi-annual installments as nearly as was possible. At her death the testator then provided a further trust for the disposition of the corpus of this moiety of $20,000.00. The provision was here made in the alternative:

If Mary M. Falkenbach died leaving issue of her body, then the trustess or such of them as might survive, should pay the said principal sum of $20,000.00 to her issue.

At the time of Mary M. Falkenbach's death, in 1934, she left no issue, so this provision of Item 11 of the will could not apply. The testator provided for this contingency as follows:

"But should she die without issue, then said Trustees, or such of them as may survive the others, shall pay·said principal sum of $20,000.00 to her brothers who may be living at the time; of her death, and to the issue of such of her brothers as may

have predeceased her, the issue of a deceased brother to take the same share as the father of such issue would take if living."

None of the brothers were living at the time of the death of Mary M. Falkenbach, and hence from the clear language of the above provision the brothers never acquirer any interest in the principal sum of $20,000.00. The conclusion is irresistible that the testator, while desiring that his sons share equally in the division of the moiety after the· death of his daughter, yet provided as a condition precedent that one or all should be living at the time of the death of the sister, Mary M. Falkenbach. All having predeceased the sister, they were not in being to receive it at the time stipulated. Had the testator made the unqualified gift to the brothers, effective on the death of the sister, then and in that event the law would have declared the interest of the brothers to be in the nature of a remainder and the amount coming to each would have been distributed under the law of decedent and distribution. This the testator did not do, but, on the other hand, made the specific provision that under such a situation he directed that the trustees pay to the issue of such brothers. By reason of this provision ▆▆▆▆▆ ▆ the issue took direct from the testator and not from or through their deceased parent. The following provision "the issue of a deceased brother to take the same share the father of such issue would take if living," does not have the effect of creating an estate in the deceased father. The use of the above-quoted language served the purpose of determining the proportion that the issue should receive and nothing more. When the proportion is determined, it passes direct from the testator.

The time prescribed under the quoted portion of Item 11 of the will for the distribution of the corpus of this moiety was the date of the death of the daughter, Mary M. Falkenbach, under· the language "Then said trustees, etc., shall pay said principal sum of $20,000.00."

The brothers having predeceased the sister, Mary M. Falkenbach, it is then directed that the trustees shall pay to the issue and so forth.

This brings us to the question as to whether or not the appellant Mary De-Lourdes Reinhard, adopted daughter of Herbert J. Reinhard, can be classed as an

issue of Jacob Reinhard, Jr., the father of Herbert.

The primary and ordinary meaning of the word "issue" means issue of body and does not include an adopted child.

Words and Phrases, Volume 4, page 3794;

Bouvier's Dictionary, under subject "Issue;"

Century Digest, under subject "Wills," Volume 49, §1087;

**Phillips, Ex., v McConica, Gdn., 59 Oh St 1;**

**Quigley v Mitchell, 41 Oh St 375.**

Sec 8030 GC, being one of the sections pertinent to adoption of children, among other things contains the following provision:

"Provided such child shall not be capable of inheriting property expressly limited to the heirs of the body of the adopting parent or parents."

The above section has been amended and is now §10512-19 GC, the amendment being effective January 1, 1932. This amended section, in part, reads as follows:

"Provided such child shall not be capable of inheriting property expressly limited to the heirs of the body of the adopting parent or parents; but shall be capable of inheriting property expressly limited by will or by operation of law to the child or children, heir or heirs at law or next of kin of the adopting parent or parents or to a class included in the foregoing."

The case of **Albright v Albright, 116 Oh St 669,** decided May 25, 1927, is direct authority on the proposition that an adopted child would not come within the classification of a legal representative of the Albright family. Charles Albright, the testator, devised property to his son Isaac Albright during his natural life and at his death to vest in fee simple in his children, if he shall have any living. If he shall leave no children living at his death, then such land shall vest in his legal representatives of the Albright family. Isaac died without children, but leaving an adopted child, Jessie Albright by name.

The Court of Appeals of this district, on February 9, 1932, had before it a somewhat similar question. The opinion by Judge Hornbeck. Syllabus 3 reads as follows:

"Rights of adopted children to take under trust deed antedating adoption were fixed by statute in effect when they were adopted, not statute as subsequently amended. (§8030 GC, now §10512-19)."

Syllabus 1 in this case reads as follows:

"Under trust deed, adopted children of settlor's deceased son held not entitled to take as 'children' or 'issue' of settlor's deceased son."

It is our conclusion that the adopted child, Mary DeLourdes Reinhard, is not entitled to participate in the distribution.

Without further extended elucidation, we also find against the contention of The Fidelity and Deposit Company of Maryland. The indebtedness of Jacob Reinhard, Jr., to the trust, evidenced by note afterwards placed in judgment, was personal and could not constitute an obligation against his issue, for the reason that the issue take direct from the testator. Under the provisions of Item 11, Jacob Jr., would have no right as a son to the possession or use of any part of the $20,000.00. This possession was solely and wholly as trustee. If he converted any part thereof to his own personal use, liability would attach against him and his bondsmen. The rights of his issue are no less in degree than are those of any of the other brothers.

Referring to the assignment held by The Fidelity and Deposit Company of Maryland, we are in accord with the finding and judgment of the Probate Court that their right of distribution under the assignment would be no more than 2/3 of ¼. The assignment was executed by four of the five children of John G. Reinhard following his death. Two of the signatories predeceased Mary M. Falkenbach and without issue. By reason of this fact no interest passed to them. At the death of Mary M. Falkenbach there remained as issue of John G. Reinhard, only three children. Two of the three had joined in the assignment, and under its terms had included all their interest, present and future. Their interest being 2/3 of ¼, the Maryland corporation would be limited to this amount.

In all other questions, if any, raised through the appeal or the trustees' application for declaratory judgment, we adopt and follow the finding of the Probate Court.

The appeals will be dismissed and costs taxed against appellants.

Exceptions will be allowed.

HORNBECK, J, concurs.
CRAIG, PJ, not participating.